Ms. Nicholas Good morning. Sorry, I was on mute. May it please the court. Wisconsin has allows the government to physically intrude upon persons' bodies, attaching them to unremovable monitoring devices 24 hours a day, every day until death, generating a precise record of the individual's public movements. This monitoring lasts for decades beyond the time that an individual is no longer subject to the supervision of the criminal justice system. The district court erred in denying a preliminary injunction to the plaintiffs to halt this serious intrusion into their constitutionally protected interests. And the district court's decision was an error for two primary reasons. Ms. Nichols, before we get into the substance, I want to ask you about the lack of transcript that you didn't include with your original brief. Our circuit rule 30 makes it crystal clear that a transcript should be included if you're challenging a judge's oral rulings. I know you subsequently cured it, but the other side has asked that we summarily affirm, given that you didn't include that transcript, can you shed some light on that? Well, I'm, of course, very embarrassed that I didn't follow the rule, and I acknowledge that it's my responsibility to do that. I did undertake good faith efforts to comply with the rule, and this was an unusual circumstance where the recording of the hearing was available online to stream for free, didn't require a separate download. So I did contact the Seventh Circuit's clerk's office, describe the circumstances, and ask for guidance. And I was unfortunately given advice that wasn't accurate. And I know it's my responsibility to understand the rules, and unfortunately, I made a mistake. And my understanding is that counsel is no longer seeking summary affirmance of the decision based on our having now submitted the transcript. But I, of course, apologize and would obviously not make the same error in the future. It just seems that circuit rule 30 is crystal clear that you have to have a transcript. It sounds like you would agree with that now. Well, of course, now I will never make that error again, and I fully understand. Okay. Thank you, Your Honor. The district court's decision was an error for two basic reasons. First, the district court found that the plaintiff's claim was completely foreclosed by this court's decision in Bolo v. Wall, in which this court upheld GPS monitoring of an individual who had been civilly determined to have a more likely than chance of reoffense and had been determined to have a psychiatric compulsion to offend against children. And he was subject to GPS monitoring under a different section of Wisconsin law. And then secondly, if analyzed under the Fourth Amendment, either applying a totality of the circumstances or a special needs analysis, this GPS monitoring law should fail Fourth Amendment scrutiny. Turning first to the question of whether Bolo forecloses plaintiff's claims here. As I mentioned, Mr. Bolo had been subject to civil commitment proceedings, and the reason that he was subject to lifetime GPS monitoring under Wisconsin law was that he had been released from civil commitment. That is a different section of Wisconsin law than the one challenged here. And Mr. Bolo this court in its Bolo decision made repeated references to the civil determination that had been made in the civil commitment proceedings applicable to Mr. Bolo. And indeed at the time Bolo was decided, the plaintiffs in this case, Mr. Antrim, Mr. Olszewski, and Mr. Graham would not have been subject to monitoring under Wisconsin law. Because at that time Wisconsin did not subject individuals to lifetime GPS monitoring based solely on their having been convicted of more than one count of a sex offense. Indeed, subsequent to the decision in Bolo, the U.S. Supreme Court in its Packingham decision cast serious doubt on the constitutionality of protected rights based solely on the fact of their previously having been convicted. But is Packingham really applicable here? That was a First Amendment case that involved intermediate scrutiny, which is not what we have here. The court's observations are quite relevant to the fact that individuals who have imposed by the criminal courts presumptively have civil rights. And they don't presumptively have a diminished expectation of being able to enjoy their constitutional freedoms based solely on the fact that they have a conviction in their background. And I think the same should be true of the Fourth Amendment here. But here we're just applying a reasonableness test. Again, in Packingham, they were looking at whether or not it was narrowly tailored. And the statements you're talking about came up in that context. That's true. But all constitutional rights involve some form of balancing of the government interests at stake and the individual interests intruded upon. And the statute at issue here is unique in its intrusiveness. It trespasses upon the individual's body. Ms. Nicholas, you've suggested that the state has other alternatives to accomplish its purpose here. Including, as I understand it, longer prison sentences and longer and more restrictive parole terms. Is that really what your clients would prefer? I think that there is a constitutionally permissible way to subject individuals to longer periods of GPS monitoring if that's what the state wants to achieve. What would that take? A different state law. The problem with the way Wisconsin law is functioning now is that... I'm sorry. What would need to be different? And let me tell you where I'm coming from on this. As I understand it, this statute in the state of Wisconsin does not have any ex post facto problems. So why not just think about this supervision as a part of the criminal sentence? It is a consequence of the conviction. And thought about that way, just as an alternative to either longer prison sentences or longer or more intrusive forms of parole, I would have difficulty seeing problems with this, for example, under the Supreme Court's decision in Sansom. Well, this interpretation of Wisconsin law occurred long after the plaintiffs were convicted. So what? I mean, it's... Surely you don't want to claim to be decided based on whether Attorney General Schimel was correct or not, do you? I don't think that's particularly relevant to the claim that we've brought here. I agree. However, the plaintiffs were convicted under existing law and they're expecting... Some of their convictions included provisions for this long-term supervision, correct? It included a particular sentence of incarceration, a particular sentence of supervision. And state law included provisions for this GPS monitoring, right? Yes, a GPS monitoring law was in place. However, at the time of plaintiff's guilty pleas and on agreement to accept an offer by the state, they had no expectation that they would continue to be monitored beyond the completion of their criminal sentences. That's based upon this question of state law, correct? Of what constitutes separatications, yes. That's true. But the plaintiffs had every reason to believe that once their period of supervision was over, the state's monitoring of them would be over. And I think that... Ms. Nicholson, your argument does turn on the Attorney General's reinterpretation of the state statute that we're confronted with here. Well, I think that there's other constitutional questions about the state statute and its constitutionality. Namely, that there is no sound factual basis for the state's presumption that everyone it subjects to lifetime GPS monitoring beyond the term of incarceration to which they are sentenced presents an ongoing decades-long threat to public safety. The state defends this scheme by reference to the seriousness of the crimes and the state's strong interest in public safety, and no one denies those interests. But there is no sound basis for a presumption that everyone who has been convicted of a sex offense in the past presents a ongoing decades-long risk to public safety that justifies this very serious intrusion into constitutionally protected interests. Ms. Nicklaus, would lifetime supervised release be constitutional as a component of the sentence for this class of offenders? So I think a predicate to that question is that we can't really say that this applies to a certain class of offenders because it's a very heterogeneous group of people that the state subjects to its lifetime GPS monitoring. You're making a facial challenge to the statute as I understand it. You have a back-up as applied challenge, but that's not what's being advanced here. It's a facial challenge to including offenders who have been convicted more than once of a sex crime and have completed their sentence. So if this were constructed, and this really is a different way of asking Judge Hamilton's question, if this monitoring, GPS monitoring, were imposed as a condition of lifetime supervised release, would that comport with the Fourth Amendment? I think that there may be different questions about the constitutionality of such a scheme, but the scheme that we have here, this is not an aspect of the plaintiff's criminal sentences. I'm having trouble seeing what's different about it, but I won't belabor the point. I would have thought that perhaps you would answer that in the case of a term of lifetime supervised release that's imposed by a judge as a matter of individualized sentencing discretion and key to the facts of the case and the offender's background. Right, and I think that that's a serious problem with Wisconsin's scheme, is that we have law enforcement deciding without any kind of proceeding or standard of proof that an entire large heterogeneous group of people all should be subject to this very serious consequence when there has not been. Not making that decision, the state legislature made that decision in promulgating the statute, and the attorney general reinterpreted it, so it swept your clients in. But you're not challenging that here, at least I think you're not, for purposes of this appeal. So we take the statute as it comes to us, as it's been construed by the state attorney general, and so it's not a question of conferring too much discretion on law enforcement. Your clients are categorically in the program. Um, that's true. However, there's not been any individualized hearing or determination that these individuals should be subjected to lifetime GPS monitoring. And Wisconsin acknowledges that it's possible to have such a proceeding, and it allows such a proceeding after someone has been on supervision for 20 years or more. So this is just the type of We are talking about an extreme intrusion into individuals' bodily integrity, their privacy, their movements, wherever they go for the rest of their lives. And this is just not the type of intrusion that should be able to be imposed on a categorical basis. What if the legislature passes a law that says for this category of crimes, mandatory minimum sentence is 20 years, no individual consideration. That's constitutional, isn't it? I think that the legislature would have significantly more discretion to do something as a form of a criminal sentence. Yes. I don't know that it would be, whether it would be subject to other types of constitutional challenges. And I'll reserve the rest of my time for rebuttal, please. Thank you. Counselor. Thank you. Good morning, Your Honors. May it please the court. I'm Jody Schmelzer, an Assistant Attorney General for the state of Wisconsin, and I represent the defendant appellee, Kevin Carr, Secretary of the Wisconsin Department of Corrections. The state of Wisconsin has determined that repeat child sex offenders pose an intolerable risk to public safety, and more specifically, to the health and well-being of our children, who are of the most vulnerable members of our society. To address this risk, Wisconsin requires lifetime GPS monitoring of sex offenders who have been convicted on two or more occasions of a qualifying sex offense. The three plaintiffs bringing this motion for preliminary injunction have done just that. They have sexually assaulted children or possessed pornographic pictures of young children on two or more occasions, and have been convicted of those offenses. They're now subject to lifetime GPS monitoring under Wisconsin's law. While Wisconsin's law does implicate the Fourth Amendment, it survives constitutional scrutiny because it survives the totality of the circumstances test, and it's also a special needs search. Given this, the district court correctly found that the plaintiffs did not have a likelihood of success on the merits of their First Amendment claim. I'd first like to address the plaintiff's argument that Mr. Below's case is different, and therefore, doesn't dictate, and therefore, that the district court did not properly rely on Baldew. And basically, the only difference between Mr. Below's case and the one that we have here is that Mr. Below had previously been committed under Chapter 980, our involuntary civil commitment statute for sex offenders. But at the time that Mr. Below brought his case, he was no longer committed under Chapter 980. He had no longer met the criteria for commitment under Chapter 980, which is important because he's in the same status as the three plaintiffs here. They didn't meet that criteria either. Yet the court went on to find that offenders like Mr. Below had a diminished expectation of privacy and that the state's compelling interest in protecting the public and its children outweighed that diminished expectation of privacy. Ms. Schmeltzer, can I ask you, in essence, about the extent to which you think the constitutionality of this supervision and monitoring program depends on empirical research? That is, suppose all of us would love to see reliable data in this field, but let's suppose we got reliable data indicating that the recidivism rate for the category of offenders were less than 5% or less than 1%. Would that undermine the constitutional basis for this quite intrusive monitoring? I think that this court actually addressed the issue of the sort of swain empirical evidence that can arise in these types of cases. In the Vasquez v. Fox case that came out in 2018, that case challenged the Illinois' residency requirements for sex offenders. In that case, the same exact challenge was made to the empirical evidence used to support those types of residency restrictions for convicted sex offenders. Basically, what this court said was that its role is not to second-guess the legislative policy judgments by parsing the latest academic studies on sex offender recidivism. This isn't a case where the legislature had nothing. They certainly had evidence to support this law, and this court in below recognized that and went through a number of different empirical studies and those types of support the government's interests. Certainly, we have the well-recognized premise from the Supreme Court that's been repeated by this court that acknowledges the high rate of recidivism among convicted sex offenders and that these folks are dangerous as a class. That kind of goes back to my question, though. That statement has been floating around a lot. It's very convenient to use. It's been criticized empirically. Suppose we had reliable information indicating that that were wrong. I think we then can look beyond that, beyond that acknowledgement by the Supreme Court, to what this court said in blue, aside from that, which is that even if there's a lower recidivism rate, even if some studies show there's a lower recidivism rate with repeat child sex offenders, it really doesn't give the full picture. The legislature is entitled to acknowledge that there's some serious underreporting of sex crimes against children. As this court recognized in below, that can be up to 70 percent for child sexual assaults and up to 86 percent for sex studies. But it's also the fact that this group of offenses is underreported to a significant degree and that these types of offenses also leave significant lifelong psychological scars. Does the state have data? This program has been in place since around 2008, right? That's correct. 2006, I believe you're right. Does the state have data on recidivism rates for people subject to the monitoring? We do not have. No, Your Honor, not that I know of. Wouldn't that be helpful to know? I think you're spending a lot of money on this process. When we talk about recidivism rates, though, there is, with these kinds of offenses, these kinds of child sex offenses, there is underreporting. So those recidivism rates aren't always an accurate portrayal of the state's interest in protecting its children. I'm not asking if you have perfect data. I'm asking if there's any data. Because presumably, if this supervision monitoring is serving a purpose, one would expect to see some empirical results. And I would argue, Your Honor, that if it's serving its purpose, then we're going to see low recidivism rates. It's been in place for 14 years. And do we have that information? I, we do not have that information, Your Honor. We have information about what the Supreme Court has acknowledged. We have what the court, this court in Beleau has acknowledged. And we see that even though an offender like Mr. Beleau might have a relatively low risk of recidivism at 8% when he's first released and 16%, you know, sometime later, that that isn't a full picture. And the court says that, in Beleau, says we can rely on that as a state, as a legislature, and acknowledge that that is underreporting of these kinds of sex crimes and that our state interest in protecting these children can take that into effect. I don't mean to harp too much about this. I just have one other question that follows up on a line of questions I was asking your friend on the other side. Suppose you've got a defendant who is convicted of a qualifying crime or series of crimes, finishes a prison sentence, finishes supervision or parole as imposed by the sentencing court, and is walking around in civil society. And Wisconsin then passes a new statute requiring him to wear an ankle monitor for this sort of 24-hour GPS monitoring. Would that give you pause constitutionally, particularly under the ex post facto clause as what is, in essence, adding to the criminal sentence? We had a similar problem arise in Indiana several years ago that I had to deal with then on the district court. I think under this court's analysis in Beleau that it may survive constitutional scrutiny, given that it would be determined to be a search and that there is a diminished expectation of privacy for these individuals given their repeated criminal convictions for child sex offenses and the state's interest in protecting that vulnerable population. I also would note as a follow-up, Your Honor, to your previous question that the court in Beleau did acknowledge that there are studies that show GPS monitoring works to reduce recidivism. There was a study out of California that says parolees on GPS supervision were half as likely to be arrested for a new sex offense, and that it actually was more effective at reducing recidivism than traditional parole supervision. So that was acknowledged by this court in Beleau. On the earlier point, I would just say I don't agree with you that people who have already finished all their sentences are entitled to only reduced expectations of privacy, but that's not this case. Ms. Schmelzer, the focus in Beleau was on sexual assault and individuals convicted of a sexual assault against a minor. Plaintiff Oslewski here is differently situated because he was convicted of possession of child pornography. Does that impact the analysis? And as part of that, how does GPS monitoring prevent the possession of child pornography? For the assault, it's obvious, and we discussed it in Beleau, that you could track where the individual's going, if he's going near a school or someplace where minors might be. But possession of child pornography can happen in your home, on a computer. How does monitoring where you are decrease recidivism with respect to possession of child pornography? Your Honor, I think that, and we talk about this in our brief, that there are studies that show that, and when we look at this from the Fourth Amendment point of view, it's whether or not the government interest here is really going to outweigh someone like Mr. Oslewski's diminished expectation of privacy. So, there are studies that show that up to 30 to 80 percent of people viewing child pornography and 76 percent of persons arrested for child pornography have actually molested a child. So, there is a connection that can be made there between child pornography and contact offenses. I think it also, we don't want to diminish, I think, the state's interest in protecting children from this type of crime, because these are really crimes in perpetuity. These images of these children, and in Mr. Oslewski's case, there were 31 images of very young children engaged in oral sex with adult men. And I don't disagree with that, but the GPS monitoring, how would that prevent or deter the possession of those images? I think it will, like I said, deter this sort of nexus that we have through studies with child viewing or arrested for child pornography with contact offenses that could occur. It will also, I think, be able to deter an individual because they know if they've downloaded images that in their home, that that would be able to be confirmed that they're in their home at that time. And knowing, like I said, the risk of those contact offenses that we do see with a child pornography arrest or viewing of child pornography. Judge Meltzer, I have a question about one of the four parts of our analysis in the below decision, and that is the evaluation of the degree of intrusiveness of GPS monitoring. Doesn't the Supreme Court's decision in the Carpenter case call into question the which seemed to dismiss quite perfunctorily the degree of intrusiveness of GPS monitoring, particularly lifetime GPS monitoring? I think that we're dealing with a different class of people that society has determined have a diminished expectation of privacy. These three plaintiffs are subjected to lifetime sex offender registry, to the registry where their photographs, their addresses, their criminal histories, the nature of their crimes are available to anyone searching a geographical area. These pop up in front of them. And I think that was an important point that Below made in whether or not they have a reasonable expectation of Carpenter. And a significant explanation in Carpenter about the intrusiveness of GPS monitoring. I think it is, Your Honor, because... It's a self-search case, but it talked about... Right. Essentially Big Brother watching every movement. And I see my time is up, Your Honor. But I would note that I believe it is still intact that we noted it was slight and incremental. And when we're balancing that, we have to look at these offenders... I'm talking about the monitoring itself, not how big the device is on the ankle physically. Yes. And seeing that my time is up just to briefly answer that, Your Honor. It is the nature of their past criminal conduct that... And what they're subjected to as far as factors into that, that was not the case in Carpenter. That individual did not have this type of history and these types of offenses that our courts and our society has not viewed as having a legitimate expectation. I get it. My question goes to the pervasiveness of the monitoring, not the diminished expectation of privacy, which I think no one debates that offenders in this category have a diminished expectation of privacy by virtue of the nature of the sex offense. But the degree and pervasiveness of the monitoring was dismissed almost out of hand in the Belew opinion. Doesn't that need to be rethought after Carpenter and a discussion of pervasiveness of electronic monitoring for lack of a better way to classify these various ways governmental surveillance? And I see your point, Your Honor, and I see my time is up. But just to briefly address that, I think we still have to take it into account in the balancing of the privacy interests here. Even if Carpenter causes this court to take a second look at the incremental loss of privacy here with the GPS monitoring device itself, that still these other factors that this court has and the nature of their convictions and how society views this as a reasonable search, that would still result in this being a reasonable search. You're still muted. I apologize. Thank you. It's life under Zoom. I just want to address that last point that was made about seeking to liken GPS monitoring, a 24-hour-a-day search that generates a record of everywhere a person goes, from registration or housing restrictions. This court has upheld lifetime registration, the Supreme Court has upheld lifetime registration, and this court has upheld residency restrictions. But in both of those cases, this court found that there was not a constitutional right at stake. There's not a constitutional right to live in the location of your choice. Here, I think there's no doubt after the Grady decision that Fourth Amendment rights are at stake, and they are greatly impacted by this, by GPS monitoring. So I just think it's essential to distinguish the nature of the intrusion here. All right. Thank you very much. Thank you. Counsel, the case is taken under review.